# 13-1975-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

BEVERLY A. RIDDLE,

*Plaintiff-Appellant,*

—against—

CITIGROUP, CITIBANK NA, CITI, JOSEPH BONELLI, BETH MCCAHEY, ALISON LEVY, MARCIE MINTZ, JEFF HOLBROOK, SARAH LASHEN, SHERRIE BACHTLER, KAREN SEGAL, HELEN O'HEHIR, LISA COEN, STEVE RANDICH, ED ZOBITZ, CHUCK PRINCE, PAT FINN, VIKRAM PANDIT, Members of the CITIGROUP BOARD OF DIRECTORS, JANE DOE(S), JOHN DOE(S),

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

IRA G. ROSENSTEIN
MELISSA D. HILL
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

*Attorneys for Defendants-Appellees*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Citigroup Global Markets, Inc. discloses that it is a wholly-owned subsidiary of Citigroup Financial Products Inc., which is a wholly-owned subsidiary of Citigroup Global Markets Holdings Inc., which is a wholly-owned subsidiary of Citigroup Inc.  Citigroup Inc. has no parent, and no publicly traded company owns more than 10% of its shares.

# <u>TABLE OF CONTENTS</u>

**Page**

COUNTERSTATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE.............................................................................2

STATEMENT OF FACTS ..................................................................................4

I.      RIDDLE'S EMPLOYMENT AT CITI ....................................................4

II.     CITI PROVIDED RIDDLE A FLEXIBLE WORK SCHEDULE TO
        ACCOMMODATE HER DISABILITY THROUGHOUT HER
        EMPLOYMENT AT CITI ........................................................................5

III.    THE 2007 REDUCTION IN FORCE .......................................................8

STANDARD OF REVIEW ..............................................................................12

SUMMARY OF ARGUMENT .........................................................................13

ARGUMENT ....................................................................................................15

I.      RIDDLE'S FMLA CLAIM WAS WAIVED BY THE
        UNAMBIGUOUS TERMS OF THE RELEASE, AND DISMISSAL
        WAS APPROPRIATE ...........................................................................15

        A.     The Release Is Undeniably Valid..............................................16

        B.     Riddle's Vague And Unsupported Allegations That She Was
               Assured Re-Employment Are Insufficient To Salvage Her
               Claims.........................................................................................18

               1.     Riddle's Allegations As To Oral Assurances Of Re-
                      Employment Are Precluded By The Release's
                      Unambiguous Integration Clause...............................18

               2.     Riddle's Allegations As To Oral Assurances Of Re-
                      Employment Are Refuted By The Terms Of The Release ......20

               3.     Riddle's Allegations Are Insufficient To Establish That
                      She Was Fraudulently Induced To Enter Into The
                      Release ........................................................................21

II.     RIDDLE'S FMLA CLAIM  IS TIME-BARRED .......................................26

CONCLUSION .................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alessi v. Monroe County*,
No. 07-6163, 2010 WL 161488 (W.D.N.Y. Jan. 13, 2010) ...............................31

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...............................................................................................12

*Baba v. Warren Mgmt. Consultants, Inc.*,
882 F. Supp. 339 (S.D.N.Y.), *aff'd*, 89 F.3d 826 (2d Cir. 1995),
*cert. denied*, 519 U.S. 840 (1996)......................................................................19

*Baker v. Dorfman*,
239 F.3d 415 (2d Cir. 2000) ................................................................................20

*Berger v. Roosevelt Inv. Grp. Inc.*,
28 A.D.3d 345 (1st Dep't 2006),
*leave to appeal denied*, 7 N.Y.3d 712 (2006)...............................................19, 22

*Bormann v. AT & T Commc'ns*,
875 F.2d 399 (2d Cir. 1989) ................................................................................21

*Bower v. Atlis Sys., Inc.*,
182 A.D.2d 951 (3d Dep't),
*leave to appeal denied*, 80 N.Y.2d 758 (1992)..................................................24

*Brown v. Cushman & Wakefield, Inc.*,
No. 01-6637, 2002 WL 1751269 (S.D.N.Y. July 29, 2002) ...............................19

*Cellular Telephone Co. v. Town of Oyster Bay*,
166 F.3d 490 (2d Cir. 1999) ................................................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...............................................................................................13

*Citibank, N.A. v. Plapinger*,
66 N.Y.2d 90 (1985) ...............................................................................................19

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Clark v. Helmsley Windsor Hotel*,
    214 A.D.2d 365 (1st Dep't 1995) .......................................................25

*Clarke v. JPMorgan Chase Bank, N.A.*,
    No. 08-2400, 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ............................28

*D'Amico v. City of New York*,
    132 F.3d 145 (2d Cir. 1998) ...............................................................12

*Donahue v. Windsor Locks Bd. of Fire Comm'rs*,
    834 F.2d 54 (2d Cir. 1987) ................................................................12

*Faris v. Williams WPC–I, Inc.*,
    332 F.3d 316 (5th Cir. 2003) ..............................................................26

*Fonseca v. Columbia Gas Sys., Inc.*,
    37 F. Supp. 2d 214 (W.D.N.Y. 1998)......................................................18

*Giovanniello v. ALM Media, LLC*,
    660 F.3d 587 (2d Cir. 2011) ..............................................................26

*Hummel v. AstraZeneca*,
    575 F. Supp. 2d 568 (S.D.N.Y. 2008) .......................................15, 16, 20

*Kregos v. Associated Press*,
    3 F.3d 656 (2d Cir. 1993), *cert. denied*, 510 U.S. 1112 (1994) ........................22

*MacDiarmid v. ING Bank N.V.*,
    No. 02-3077, 2003 WL 41995 (S.D.N.Y. Jan. 6, 2003)....................................21

*Manufacturers Hanover Trust Co. v. Yanakas*,
    7 F.3d 310 (2d Cir. 1993) .................................................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)....................................................................12, 13

*Mazurkiewicz v. N.Y. City Health & Hosps. Corp.*,
    585 F. Supp. 2d 491 (S.D.N.Y. 2008),
    *aff'd*, 356 F. App'x 521 (2d Cir. 2009)............................................16

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Meyercord v. Curry*,
   38 A.D.3d 315 (1st Dep't 2007) ........................................................25

*Montchal v. Ne. Sav. Bank*,
   243 A.D.2d 452 (2d Dep't 1997).......................................................22

*O'Brien v. Nat'l Prop. Analysts Partner*s,
   936 F.2d 674 (2d Cir. 1991) ..............................................................22

*Olsen v. Pratt & Whitney Aircraft*,
   136 F.3d 273 (2d Cir. 1998) ..............................................................22

*Pinsky v. JP Morgan Chase*,
   576 F. Supp. 2d 564 (S.D.N.Y. 2008) ...............................................17

*Porter v. New York Univ. Sch. of Law*,
   392 F.3d 530 (2d Cir. 2004) ..............................................................27

*R.B. Ventures, Ltd. v. Shane*,
   112 F.3d 54 (2d Cir. 1997) ................................................................12

*Reyes v. N.Y.C. Health & Hosps. Corp.*,
   No. 10-1606, 2012 WL 3764061 (E.D.N.Y. Aug. 29, 2012) ............29

*Riddle v. Citigroup*,
   449 F. App'x 66 (2d Cir. 2011) .........................................................27

*Ross v. Bolton*,
   904 F.2d 819 (2d Cir. 1990) ..............................................................23

*Saleemi v. Pencom Sys., Inc.*,
   No. 99-667, 2000 WL 640647 (S.D.N.Y. May 17, 2000),
   *aff'd*, 242 F.3d 367 (2d Cir. 2000)...................................................24

*Stamelman v. Fleishman-Hillard, Inc.*,
   No. 02-8318, 2004 WL 1719348 (S.D.N.Y. July 29, 2004) .............24

*Taylor v. Progress Energy, Inc.*,
   415 F.3d 364 (4th Cir. 2005) .............................................................25

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Thomsen v. Stantec, Inc.*,
   483 F. App'x 620 (2d Cir. 2012) ........................................................30

*Tufano v. One Toms Point Lane Corp.*,
   64 F. Supp. 2d 119 (E.D.N.Y. 1999),
   *aff'd*, 229 F.3d 1136 (2d Cir. 2000) ..................................................23

*U.S. v. Diebold, Inc.*,
   369 U.S. 654 (1962) .........................................................................12

*Vista Co. v. Columbia Pictures Indus., Inc.*,
   725 F. Supp. 1286 (S.D.N.Y. 1989) .................................................24

*W. World Ins. Co. v. Stack Oil, Inc.*,
   922 F.2d 118 (2d Cir. 1990) .......................................................13, 27

*Whiting v. Johns Hopkins Hosp.*,
   416 F. App'x 312 (4th Cir. 2011) .....................................................26

**STATUTES**

29 U.S.C. § 2617(1) ..............................................................................26

29 U.S.C. § 2617(2) ..............................................................................26

**OTHER AUTHORITIES**

9 C.F.R. § 825.220(d) (2009).................................................................26

73 Fed. Reg. 67988 (Nov. 17, 2008) ....................................................26

Fed. R. App. P. 28(e) .............................................................................4

FED. R. APP. P. 32(a)(5) .......................................................................33

FED. R. APP. P. 32(a)(6) .......................................................................33

FED R. APP. P. 32(a)(7)(B).....................................................................33

FED. R. CIV. P. 9(b) .................................................................22, 24, 25

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Fᴇᴅ. R. Cɪᴠ. P. 12...................................................................................27

Fᴇᴅ. R. Cɪᴠ. P. 56...................................................................................27

## <u>COUNTERSTATEMENT OF THE ISSUES</u>

1. Whether the district court properly granted Defendants-Appellees' Motion for Summary Judgment and dismissed Plaintiff-Appellant's Complaint.

2. Whether the district court properly determined that Plaintiff fully released and waived all claims against Defendants through her execution of the Separation Agreement and Release in 2007, barring Plaintiff-Appellant's FMLA claim.

3. Whether Plaintiff-Appellant's FMLA claim was barred by the statute of limitations, providing an independent ground for affirming the district court's dismissal of the Complaint.

## STATEMENT OF THE CASE

In June 2009, Plaintiff-Appellant Beverly Riddle ("Riddle" or "Plaintiff") filed the action below against her former employer, Citigroup Global Markets, Inc. ("Citi"),[1] as well as fifteen individuals, the members of the board of directors of Citi's ultimate parent company, Citigroup Inc., and an unspecified number of Jane and John Does (collectively, "Citi," "Defendants," or "Defendants-Appellees"). In her Complaint, Riddle asserted fourteen causes of action alleging various claims of discrimination and retaliation under Title VII, the ADA, the ADEA, the FMLA and various provisions of New York Law.

In February 2010, Defendants filed a Motion for Summary Judgment as to all of Riddle's claims. By Order dated November 8, 2010, the District Court, Hon. Alvin K. Hellerstein, granted the Defendants' motion and dismissed the Complaint. In so holding, the District Court found that: (1) Riddle's federal claims were time-barred for her failure to timely file an administrative charge with the EEOC; (2) the circumstances, including the clarity of Riddle's notice of termination and release agreement, did not merit an equitable extension of the time limit for filing such a charge; and (3) the District Court lacked subject-matter jurisdiction over the remaining state law claims. Plaintiff appealed to this Court.

---

[1] While Riddle named "Citigroup," "Citibank NA," and "Citi" as defendants in this action, it appears from the record that she intended to name the entity by which she was employed, Citigroup Global Markets, Inc.

On December 5, 2011, the Second Circuit upheld the District Court's dismissal of all but one of Riddle's claims, remanding for further consideration only Riddle's claim for alleged violation of the FMLA.  Specifically, this Court identified two issues for consideration on remand:  (1) whether Defendants' alleged conduct as to Plaintiff's rights under the FMLA was "willful," and thus whether a three-year statute of limitations applied; and (2) whether Riddle's full Release of claims against Citi precluded her FMLA claim.  Following remand, the parties were permitted to conduct discovery, and on September 17, 2012, Plaintiff moved for summary judgment on her FMLA claim.  On October 26, 2012, Defendants cross-moved for summary judgment.  On April 17, 2013, Judge Hellerstein issued an order granting Defendants' motion for summary judgment, denying Plaintiff's motion for summary judgment, and dismissing Plaintiff's remaining FMLA claim.  In particular, the District Court found that the Release was valid, enforceable, and precluded Plaintiff's FMLA claim, warranting judgment in Defendants' favor.  Finding her FMLA claim barred by the Release, the District Court declined to address the question of whether it was also barred by the statute of limitations.

This appeal followed.

## <u>STATEMENT OF FACTS</u>

### I.    **Riddle's Employment at Citi.**

Riddle was hired by Citi in January 2004 as a temporary Administrative Assistant in its Global Corporate and Investment Bank and subsequently assumed a full-time position in August 2004.  (Dkt. 1 at ¶¶ 2, 23 & Ex. 4 (Compl.).)[2]  From the beginning of her employment, Riddle reported to Beth McCahey, a Vice President in the Global Corporate and Investment Bank.  (Dkt. 55 at ¶ 1 (Rule 56.1 Statement of Undisputed Material Facts In Support of Their Cross-Motion For Summary Judgment And Response to Plaintiff's Statement of Facts, hereinafter "SOF"); Dkt. 52-1 at 53-54 (Plaintiff's Deposition Transcript, hereinafter "Pl. Dep.").)  In July 2004, Riddle submitted a Disability Declaration to her supervisor, McCahey, and the Human Resources Department at Citi, informing them of her alleged disability resulting from depression and allergies, and notifying them that with certain accommodations, she could continue to perform the responsibilities of her job.  (A-23; Dkt. 55 at ¶ 2 (SOF).)  In August 2004, McCahey promoted Riddle

---

[2] Pursuant to Fed. R. App. P. 28(e), citations to Plaintiff's Appendix will be as "A-__."  Plaintiff submitted an Appendix without the consent or input of Defendants, therefore the Plaintiff's Appendix does not contain all of the documents upon which Defendants rely in this brief.  As a result, and in accordance with the instructions from the Second Circuit's Case Manager, Defendants have cited directly to the district court docket, citations to which will be "Dkt. __" followed by a brief description of the cited document, for ease of reference by the Court.

to a full-time Administrative Assistant at Citi.  (Dkt. 55 at ¶ 3 (SOF); Dkt. 52-1 at

58-59 (Pl. Dep.).)

## II.    Citi Provided Riddle A Flexible Work Schedule to Accommodate Her Disability Throughout Her Employment at Citi.

McCahey worked with Riddle to accommodate her disability.  In particular,

Ms. McCahey allowed Ms. Riddle to come in late when necessary or take

intermittent periods of time off in order to accommodate the symptoms of her

depression, despite the fact that the regular work schedule for employees like

Riddle was 9:30 am to 5:30 pm.   As Riddle described it, the situation was

"working out."  (Dkt. 55 at ¶ 4 (SOF); Dkt. 52-1 at 57- 60 (Pl. Dep.).)

On December 21, 2006, Appellant received an annual performance review

for 2006, identifying various strengths and weaknesses in her job performance for

the previous year.   Among other things, the review noted that her on-time

attendance to work in 2006 was inconsistent, but that she did notify management

when she would be late.  (Dkt. 55 at ¶ 6 (SOF); Dkt. 52-54 (2006 Performance

Assessment).)   Shortly thereafter, Appellant complained to McCahey about the

inclusion of reference to her lateness in the Performance Assessment since she had

been given permission to do so based on the 2004 Disability Declaration.  (Dkt. 55

at ¶ 7 (SOF); Dkt. 52-1 at 69-73 (Pl. Dep.); Dkt. 53 at ¶ 4 (Declaration of Elizabeth

McCahey, hereinafter "McCahey Decl."); Dkt. 54 at ¶ 4 (Declaration of Alison

5

Levy, hereinafter "Levy Decl.").)  McCahey referred her to Human Resources representatives.

On January 19, 2007, Appellant emailed Alison Levy and Sarah Lashen in Human Resources to discuss her assessment.  She told them that McCahey had been fully aware of her allergies and depression and had been allowing her extra time in the morning.  She then submitted a prescription form, addressed "to whom it may concern," from a Dr. J.S. Weinstein, dated January 18, 2007, stating that "Beverly Riddle is suffering from depression" and "[s]he will need time in the morning for herself."  (A-27; Dkt. 55 at ¶¶ 8-9 (SOF); Dkt. 52-1 at 65 (Pl. Dep.); Dkt. 53 at ¶ 5 (McCahey Decl.); Dkt. 54 at ¶ 4 (Levy Decl.).)  In writing to Levy and Lashen, Appellant stated that throughout 2004, 2005, and 2006, she worked with McCahey to address her medical condition and reasonable accommodation needs, and "believed that [her] work schedule had been adjusted to accommodate [her] medical condition and needs."  (A-26; Dkt. 55 at ¶ 9 (SOF); Dkt. 53 at ¶ 5 (McCahey Decl.).)  Her email to Human Resources on January 19, 2007 made no mention of any request for a leave of absence or reasonable accommodation other than a flexible work schedule to allow her to arrive to work late in the mornings as needed.  (A-26; Dkt. 55 at ¶ 10 (SOF).)

Appellant met again with Lashen and Levy on January 22, 2007 regarding removing the reference to her medical condition from her Performance Assessment

and "to acknowledge that headway was made during [their] meeting."  Appellant stated that she would submit necessary medical release forms for Citi to obtain her medical records, "so that [she] may be considered for Flex-Time to [her] work schedule."  (A-30; Dkt. 55 at ¶ 11 (SOF); Dkt. 53 at ¶ 6 (McCahey Decl.); Dkt. 54 at ¶ 5 (Levy Decl.).)  Appellant completed and submitted to Citi a Release of Medical Information to the Citigroup Medical Department and a Request for Physician Information to enable Citi to contact Riddle's medical providers regarding her need for Flex-Time accommodation.  (A-28-29; Dkt. 55 at ¶ 12 (SOF).)  Again, no record was ever made regarding FMLA leave.

On January 26, 2007, Levy spoke with Appellant again, and on February 1, 2007, Riddle met with Levy and Marcie Mintz and followed up by email to Levy and Mintz on February 7, 2007 regarding her request for "Flex-Time as a Reasonable Accommodation."  (A-31; A-35; Dkt. 55 at ¶¶ 13-14 (SOF); Dkt. 52-1 at 92-96, 103-105 (Pl. Dep.).)  In her email, Appellant noted that "some of the issues [she and McCahey] were concerned with were amicably resolved," and reiterated her request for "Flex-Time to [her] work schedule for reasonable accommodation."  (A-35; Dkt. 55 at ¶ 14 (SOF).)  Again, Riddle's emails to Human Resources on January 26 and February 1, 2007 made no mention of any request for a leave of absence, FMLA, or reasonable accommodation other than a

flexible work schedule to allow Appellant to arrive to work late in the mornings as needed.  (A-35; Dkt. 55 at ¶ 15 (SOF).)

On February 5, 2007, Citi issued a revised Performance Assessment removing the statement about her lateness.  Citi also permitted Plaintiff to continue her Flex-Time arrangement with McCahey.  (A-33; Dkt. 55 at ¶ 9 (SOF).)[3]  Thus, Citi gave Appellant everything she asked for with regard to her requests.  Neither Levy nor McCahey recall Appellant ever requesting leave under the FMLA, Appellant did not submit any documentation from any medical professional suggesting that she required a leave of absence, and Citi has no records which would suggest that she ever sought such leave.  (Dkt. 55 at ¶ 16 (SOF); Dkt. 54 at ¶ 9 (Levy Decl.).)  Had she notified Human Resources of her desire to apply to FMLA leave, Levy or another Human Resources professional would have followed up to provide her with the necessary application and associated paperwork.  (*Id.*)

## III.    The 2007 Reduction in Force

In the spring of 2007, as part of a broader effort to reduce costs and overall staff levels, Citi transferred Riddle's entire division from Manhattan to New Jersey.  (Dkt. 1 at ¶¶ 43, 45 (Compl.); Dkt. 55 at ¶ 18 (SOF); Dkt. 53 at ¶ 9 (McCahey Decl.); Dkt. 54 at ¶ 7 (Levy Decl.).)  On April 18, 2007, Appellant was

---

[3] Citi has a robust FMLA policy in place, and takes seriously any requests for leave under the FMLA.  Information about FMLA leave would be available to her in Citi's employment handbook and intranet site.  (Dkt. 55 at ¶ 16 (SOF); Dkt. 54 at ¶ 6 (Levy Decl.).)

informed that her employment was being terminated as part of this reduction-in-force.  At that time, she was presented with a Separation Agreement and Release (the "Release"), pursuant to which she was immediately relieved of all her responsibilities and was no longer required to report to work.  The Release unequivocally stated in the first sentence: "your employment shall be considered terminated effective June 18, 2007."  (Dkt. 1 at ¶¶ 39, 45 (Compl.); Dkt. 55 at ¶ 19 (SOF); Dkt. 52-13 (Separation Agreement and Release dated April 18, 2007, hereinafter "Release")); Dkt. 53 at ¶ 9 (McCahey Decl.); Dkt. 54 at ¶ 7 (Levy Decl.); Dkt. 52-1 at 122-124 (Pl. Dep.).)

In exchange for severance pay and various other benefits, including subsidized COBRA premiums and outplacement services to assist her in securing a position outside Citi, Plaintiff agreed, among other things, to waive any and all claims against Citi and its agents, officers, and employees.  Specifically, Appellant's Release expressly provides as follows:

> In consideration for the promises made by [Citi] herein, you, on your own behalf . . . fully release and discharge [the various Citi entities], their parents, subsidiaries, affiliates, successors, assigns, officers, directors, employees, representatives and agents ("Released Parties") from any and all liability, claims, demands, actions, obligations, causes of action, suits, grievances, of any kind whatsoever, known or unknown, at law or in equity, which you may have had, claim to have had, or now have or claim to have, which are or may be based on any facts, acts, conduct, documents, representations, omissions, contracts, deferred compensation plans, the CAP, claims, events, or other things occurring at any time on or before the Effective Date of this

Agreement and arising out of or relating to your employment with or separation from [Citi] . . . . You understand that you are releasing, among other claims, claims for age, race, sex, religion, national origin, disability and any other form of employment discrimination.

(Dkt. 55 at ¶ 20 (SOF); Dkt. 52-13 at ¶¶ 1, 3 (Release); Dkt. 52-1 at 124-26, 129-31 (Pl. Dep.); Dkt. 53 at ¶ 8 (McCahey Decl.).) The Release also provides, directly above Riddle's signature:

THIS IS A RELEASE. I AM GIVING UP MY RIGHTS TO SUE AND ANY OTHER RIGHTS UNDER ANY [Citi] DISPUTE RESOLUTION PROCEDURE.

(Dkt. 55 at ¶ 21 (SOF); Dkt. 52-13 at ¶ 6 (Release) (capitalization in original); Dkt. 52-1 at 120 (Pl. Dep.).)

Riddle's Release also contains an unambiguous integration clause, expressly disclaiming "all prior discussions, negotiations, and agreements with respect to [her] employment and separation" from Citi, with the exception of various restrictive covenants not at issue here.  )Dkt. 55 at ¶ 22 (SOF); Dkt. 52-13 at ¶ 22 (Release).) She was advised to consult with an attorney and was given forty-five days to consider whether to accept the terms and conditions of the Release, as well as an additional seven days to revoke her acceptance if she so decided.  (Dkt. 55 at ¶ 23 (SOF); Dkt. 52-13 at ¶ 20 (Release); Dkt. 52-1 at 133-135 (Pl. Dep.).)  She "agreed to and accepted" the Release on April 18, 2007, expressly acknowledging that: (1) she entered into the Release "of [her] own free will"; (2) she "fully

10

underst[ood] and accepte[ed] the terms of th[e] Agreement"; and (3) "her signature [was] freely, voluntarily and knowingly given."   Indeed, she does not contend otherwise.  (Dkt. 55 at ¶ 23 (SOF); Dkt. 52-13 at ¶¶ 20, 22 (Release); Dkt. 52-1 at 121, 134-135 (Pl. Dep.).)

## <u>STANDARD OF REVIEW</u>

A district court's grant of summary judgment is reviewed *de novo. Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 492 (2d Cir. 1999).  This Court "utilizes the same standard as the district court: summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997).  In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party.  *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam); *see also Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

To defeat a motion for summary judgment, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the non-moving party must set forth "specific facts showing that

there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)); *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990).  Importantly, the non-moving party cannot defeat summary judgment with evidence consisting of mere conclusory allegations, speculation, or conjecture.  *W. World*, 922 F.2d at 121. Although the non-moving party need not produce evidence in admissible form for trial to avoid summary judgment, the non-moving party cannot rest on the pleadings, but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## SUMMARY OF ARGUMENT

Riddle was terminated from her position at Citi in 2007 as part of a reduction-in-force (RIF).  In connection with the RIF, she executed a release of all claims against Citi for which she received severance pay.  Notwithstanding that Release, Riddle subsequently sued Citi and the myriad Individual Defendants, including two former Chief Executive Officers of Citi, various human resource personnel, in-house lawyers and other managers who had the misfortune to have encountered her professionally.  Now, seven years later, after the district court twice dismissed her claims and has entered judgment for Defendants-Appellees, Plaintiff-Appellant hopes to revive her claim under the FMLA through her second appeal to this Court.

13

As explained above, this Court has already affirmed dismissal of 13 of Riddle's 14 original claims. On remand to the district court were two narrow questions, either one of which, if answered in Defendants' favor, would dispose of Riddle's lone remaining claim. Each of these issues therefore provides this Court with independent grounds on which to affirm the district court's dismissal of Riddle's claims.

In the present case, Riddle has failed to adduce any admissible evidence, other than her own self-serving, unsubstantiated, and speculative allegations to support her claims. First, there can be no genuine issue of fact as to the validity and enforceability of the release provision contained in the separation agreement that Riddle knowingly and willingly executed. The district court properly held that the Release bars Riddle's lone remaining claim in this lawsuit. Second, even if Riddle had not released all claims against Citi, Riddle did not – and could not – meet her burden to demonstrate that Citi *willfully* denied her FMLA rights. Accordingly, the FMLA's two-year limitations period applies and her remaining claim is time-barred.

Accordingly, no genuine issue of material fact exists for trial to preclude summary judgment for Defendants, and Riddle wholly failed to carry her burden to entitle her to summary judgment. For the foregoing reasons and as detailed below,

the District Court's decision should be affirmed and judgment entered in Defendants' favor.

## **ARGUMENT**

### I.   **RIDDLE'S FMLA CLAIM WAS WAIVED BY THE UNAMBIGUOUS TERMS OF THE RELEASE, AND DISMISSAL WAS APPROPRIATE.**

The District Court properly held that Riddle's claims were barred by the valid release of claims she executed upon termination from employment at Citi, through which she discharged "all liability, claims, demands, actions, obligations, causes of action, suits, grievances of any kind whatsoever" against Citi.  (Dkt. 52-13 at ¶ 3 (Release).)

"Courts applying New York Law will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not 'the product of fraud, duress, or undue influence.'"  *Hummel v. AstraZeneca*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (quoting *Skluth v. United Merchs. & Mfrs., Inc.*, 163 A.D.2d 104 (1st Dep't 1990)).

Through her Release, Riddle unequivocally waived all of the claims she asserted in this action pertaining to her employment with and termination from Citi, including her remaining FMLA claim.  She explicitly acknowledged her "understand[ing] that [she was] releasing, among other claims, claims for age, race, sex, religion, national origin, disability and any other form of employment discrimination."  (Dkt. 52-13 at ¶ 3 (Release).)  Further, the Release provides,

directly above Riddle's signature and in capital letters: "THIS IS A RELEASE. I AM GIVING UP MY RIGHTS TO SUE." (*Id.*)

In short, the Release is "clear and unambiguous," *Hummel*, 575 F. Supp. 2d at 570, and unequivocally provides that, in exchange for severance and various other benefits, Riddle agreed to "fully release and discharge" the Defendants in this action from any claims, known or unknown, up to that point in time. (Dkt. 52-13 at ¶ 3 (Release).)

### A.     The Release Is Undeniably Valid.

Under the factors used to assess the validity of a release, there can be no question that Riddle's waiver of claims against Citi is valid. *See Mazurkiewicz v. N.Y. City Health & Hosps. Corp.*, 585 F. Supp. 2d 491, 499 (S.D.N.Y. 2008) (describing factors), *aff'd*, 356 F. App'x 521 (2d Cir. 2009).

*First*, as described above, the terms of the Release are clear and unambiguous; there could be no doubt on the part of anyone reading the Release that Riddle was waiving any and all claims relating to her employment with or termination from Citi.

*Second*, although she elected to execute the Release sooner, Riddle admits she was afforded forty-five days to consider whether to accept the Release, and an additional seven days beyond that to revoke her acceptance if she so decided. (Dkt. 52-13 at ¶ 20 (Release); Dkt. 52-1 at 133-134 (Pl. Dep.).)

16

*Third*, Citi advised Riddle to consult with an attorney, and afforded her ample time to do so.  (Dkt. 52-13 at ¶ 20 (Release); Dkt. 52-1 at 133-134 (Pl. Dep.).)

*Fourth*, Riddle admitted she received a lump-sum severance payment, medical insurance, and outplacement services, all valuable consideration to which she was not otherwise entitled.  (Dkt. 52-13 at ¶ 1 (Release); Dkt. 52-1 at 124-127 (Pl. Dep.).)

*Fifth*, Riddle concedes she is college-educated and, in the Complaint, extols her business skills and prowess.  (Dkt. 1 at ¶¶ 1-2 (Compl.).)

*Finally*, Riddle expressly acknowledged that she entered into the Release "of [her] own free will," that she "fully underst[ood] and accept[ed] the terms of th[e] Agreement," and "that her signature [was] freely, voluntarily and knowingly given."  (Dkt. 52-13 at ¶¶ 20, 22 (Release).)

Under these circumstances, Riddle can demonstrate no set of facts rendering it even plausible that she did not freely and knowingly enter into the Release.  *See, e.g.*, *Pinsky v. JP Morgan Chase*, 576 F. Supp. 2d 564, 568 (S.D.N.Y. 2008) (holding waiver knowing and voluntary where plaintiff was "highly educated and [had] considerably business experience; was given ample time to consult an attorney and was encouraged to do so; and received a benefit in consideration for her signature . . .").

17

Accordingly, based upon the clear and unambiguous terms of the Release – of which there can be only one reasonable interpretation – Plaintiff's FMLA claim is barred as a matter of law.

**B.**  **Riddle's Vague And Unsupported Allegations That She Was Assured Re-Employment Are Insufficient To Salvage Her Claims.**

Critically, Riddle does not contend that she did not understand and agree to the terms of the Release at the time she signed it.  Instead, she suggests only that she signed the Release because she believed that she would be "transferred and/or rehired" at some unspecified point after its execution.  (Dkt. 1 at ¶ 39 (Compl.); Dkt. 52-1 at 139-144 (Pl. Dep.).)  Riddle's vague and conclusory allegations are: (1) barred by the Release's unambiguous integration clause; (2) implausible in light of the express terms of the Release; and (3) unsupported by any record evidence, and thus insufficient to raise an issue of fact as to the validity of the Release sufficient to survive summary judgment.

**1.**  **Riddle's Allegations As To Oral Assurances Of Re-Employment Are Precluded By The Release's Unambiguous Integration Clause.**

Where an employee's separation and release agreement contains an express clause disclaiming reliance upon any representations made outside the four corners of the agreement, the employee is precluded from later challenging the agreement as procured by fraud.  *See Fonseca v. Columbia Gas Sys.*, *Inc.*, 37 F. Supp. 2d 214, 229 (W.D.N.Y. 1998).  *See also Manufacturers Hanover Trust Co. v. Yanakas*, 7

F.3d 310, 315 (2d Cir. 1993); *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 94-95 (1985).  Thus, Riddle's allegation that she was promised "transfer, recall and/or rehire," (Dkt. 1 at ¶ 22 (Compl.); Dkt. 52-1 at 139-144 (Pl. Dep.); Appellant's Brief at 8-9), is of no avail because her Release contains an unambiguous integration clause expressly disclaiming reliance on "all prior discussions, negotiations, and agreements with respect to [Riddle's] employment and separation" from Citi.  (Dkt. 52-13 at ¶ 22 (Release).)  *See Baba v. Warren Mgmt. Consultants, Inc.*, 882 F. Supp. 339, 344 (S.D.N.Y. 1995) (because release prohibited oral modifications, "the alleged conversation that [*pro se*] plaintiff referred to can have no effect on its terms"), *aff'd*, 89 F.3d 826 (2d Cir. 1995), *cert. denied*, 519 U.S. 840 (1996).  *Cf. Brown v. Cushman & Wakefield, Inc.*, No. 01-6637, 2002 WL 1751269, at *16 (S.D.N.Y. July 29, 2002) (Plaintiff alleging fraudulent inducement "had but to read the contract to know its terms"), *adopted*, 235 F. Supp. 2d 291 (S.D.N.Y. 2002); *Berger v. Roosevelt Inv. Grp. Inc.*, 28 A.D.3d 345, 345 (1st Dep't 2006) (alleged promises as to "continued employment" superseded by the merger clause in the parties' agreement), *leave to appeal denied*, 7 N.Y.3d 712 (2006).  In other words, because the Release contains a valid integration clause and lacks any indication whatsoever of a promise, representation, or assurance as to future employment with Citi, Riddle's self-

serving, unsubstantiated allegations demand affirmance of the district court's ruling.

### 2. Riddle's Allegations As To Oral Assurances Of Re-Employment Are Refuted By The Terms Of The Release.

Even in the absence of an integration clause, Riddle's claims would still fail because her claims of assurances of re-employment are wholly inconsistent with, and directly contradicted by, the terms and purpose of the Release. *See Hummel*, 575 F. Supp. 2d at 571 ("Where the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed.") (internal quotation marks omitted).

Here, the Release is, by its terms, a "separation agreement" made in contemplation of the termination of Riddle's employment relationship with Citi. (Dkt. 52-13 at ¶ 1 (Release).) To this end, Riddle was immediately relieved of all responsibilities, provided a lump-sum severance payment, and offered outplacement services to assist her in obtaining employment outside Citi. (*Id.* at 1-2.) Plaintiff admitted as much under oath. (Dkt. 52-1 at 124-126 (Pl. Dep.).)[4]

---

[4] Riddle challenges for the first time now the adequacy of the consideration she received for executing the Release. Appellant's Br. at 18. Therefore, Riddle has waived this argument on appeal. *See, Baker v. Dorfman,* 239 F.3d 415, 423 (2d Cir. 2000) (an appellate court will not consider arguments unless they were raised before the district court). Moreover, even if the Court could consider this claim now, Riddle provides no evidence or authority to support her contention that "$8,932.08 is not a valid equitable consideration." To the contrary, Riddle admits she received something of value (payment of $8,932.08) to which she was not

Moreover, Riddle was subject to non-solicitation restrictions which prevented her from taking employees or customers away from Citi for a period of one year. (Dkt. 52-13 at ¶¶ 14-15 (Release).) Together, these provisions – and her concessions – directly refute Riddle's allegations that she was assured future employment with Citi and undermine any argument that she was fraudulently induced to enter into the Release. *See MacDiarmid v. ING Bank N.V.*, No. 02-3077, 2003 WL 41995, at *3 (S.D.N.Y. Jan. 6, 2003) ("[W]here provisions in the contract expressly contradict the claimed fraudulent oral representation … plaintiff cannot sustain a fraud claim.").

Ultimately, both the explicit terms of the Release and its absolute silence as to any right to future employment prevent the conclusion that a reasonable person could read the Release and believe that Riddle was entitled to reinstatement. Riddle's unsupported, self-serving allegations to the contrary cannot change that fact.

### 3. Riddle's Allegations Are Insufficient To Establish That She Was Fraudulently Induced To Enter Into The Release.

To prevail on a claim that she was fraudulently induced into entering into the Release with the promise of future employment with Citi, Riddle bears the burden

---

otherwise entitled, constituting valid and adequate consideration. *Bormann v. AT & T Commc'ns,* 875 F.2d 399, 403 (2d Cir. 1989) (because plaintiff received something to which she was not otherwise entitled, sufficient consideration supported release, rendering release valid).

of establishing, by clear and convincing evidence: (i) that Citi made a misrepresentation of fact; (ii) which was false and known to be so when made; and (iii) made for the purpose of inducing reliance; and (iv) that she justifiably relied on the misrepresentation. *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993), *cert. denied*, 510 U.S. 1112 (1994); *Berger*, 28 A.D.3d at 345. Here, even assuming, *arguendo*, that the Release lacked an explicit integration clause, and even assuming that everything in the Release did not evidence that the parties had no intention of continuing Riddle's employment relationship in any form at any time, Riddle's allegations would still be insufficient to defeat summary judgment for several independent reasons.

First, it is well-established that a plaintiff alleging fraudulent inducement must point to alleged misrepresentations that are clear and concrete, not "vague and speculative." *Montchal v. Ne. Sav. Bank*, 243 A.D.2d 452, 453 (2d Dep't 1997). Indeed, Riddle must "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Accordingly, the Complaint must: (i) describe in detail the statements Riddle claims are fraudulent; (ii) identify the speaker; (iii) state when and where the statements were made; and (iv) explain why the statements are fraudulent. *Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998); *see also O'Brien v. Nat'l Prop. Analysts Partner*s, 936 F.2d 674, 676 (2d Cir. 1991) (Rule 9(b) requires "[a]n ample factual basis"). These pleading

standards are "rigorously enforce[d]," *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990), and Riddle cannot escape these requirements merely by pointing to her *pro se* status.  *See, e.g.*, *Tufano v. One Toms Point Lane Corp.*, 64 F. Supp. 2d 119, 128 (E.D.N.Y. 1999) (dismissing *pro se* plaintiff's fraud claim under Rule 9(b) for failure to plead elements with requisite particularity), *aff'd*, 229 F.3d 1136 (2d Cir. 2000).[5]

Applying this standard to the Riddle's claim, her allegations and purported evidence offered on summary judgment simply "do not pass muster," as the district court aptly found.  (A-5.)  In the Complaint, and echoed in her deposition, Riddle asserts, in vague and conclusory fashion, only that she was "led to believe" that she would be "transferred and/or rehired" after her termination.  (Dkt. 1 at ¶ 42 (Compl.); Dkt. 52-1 at 140-144 (Pl. Dep.).)  On appeal, she points to no evidence, other than her own self-serving allegations, of any fraudulent statements by Citi

_____

[5] Riddle's attempt to liken her situation to the Madoff investors who relied on promises that Madoff would invest their money in various securities and would later return profits to them, is puzzling at best, and strains plausibility.  Appellant's Br. at 17.  Specifically, Riddle claims that "Citigroup preyed upon Riddle's weakness by offering her time off in any form that benefited them," which then somehow induced her to accept a severance package in exchange for execution of a release of claims.  *Id.*  Not only are these claims unsupported by any record evidence, but they defy logic.  The undisputed facts demonstrate that Citi provided Riddle with a flexible schedule and intermittent time off at her request, wholly irrespective of (and, indeed, months before) her execution of the Release.  Nor does she present any evidence of the types of express promises and clear misrepresentations that were the subject of and admitted to in the Madoff proceeding.

employees, and fails entirely to identify any facts, evidence, or details sufficient to render her allegations more than mere speculation.

Second, even if made, the purported promise of future employment is insufficient to satisfy the pleading burden imposed by Rule 9(b) as such a promise is not a material misrepresentation of present fact. As such, Riddle cannot support her allegations of fraudulent inducement.[6]  *See Saleemi v. Pencom Sys., Inc.*, No. 99-667,  2000 WL 640647, at *5 (S.D.N.Y. May 17, 2000) ("expression of hope" as to future performance not actionable), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *Stamelman v. Fleishman-Hillard, Inc.*, No. 02-8318, 2004 WL 1719348, at *3 (S.D.N.Y. July 29, 2004) ("The failure to fulfill a promise to perform future acts is not grounds for a fraud action unless there existed an intent not to perform at the time the promise was made."); *Bower v. Atlis Sys., Inc.*, 182 A.D.2d 951, 953 (3d Dep't 1992) (vague and non-specific statements as to "continued" employment cannot be construed "as the impartation of false information … but merely as an expression of future expectation."), *leave to appeal denied*, 80 N.Y.2d 758 (1992).

Third, Riddle's alleged reliance on the purported oral promise of "transfer and/or rehire" is unreasonable as a matter of law in light of the express terms of the

---

[6] Under New York law, a claim of fraud must be dismissed where it is merely duplicative of a breach of contract claim. *See, e.g.*, *Vista Co. v. Columbia Pictures Indus., Inc.*, 725 F. Supp. 1286, 1294 (S.D.N.Y. 1989) (*citing*, *inter alia*, *Brick v. Cohn-Hall-Marx Co.*, 276 N.Y. 259, 263-4 (1937)).  Thus, to the extent Riddle insists that there was an enforceable promise to re-employ her, she cannot assert a claim of fraudulent inducement to grieve Citi's failure to do so.

Release.  It is well-established that, where employment is at will, "any reliance on

… future intentions, such as job security or future changes" is also unreasonable as

a matter of law.  *Meyercord v. Curry*, 38 A.D.3d 315, 316 (1st Dep't 2007).  *See*

*also Clark v. Helmsley Windsor Hotel*, 214 A.D.2d 365, 366 (1st Dep't 1995)

("Plaintiff's status as an at-will employee necessarily negated any claim of

reasonable reliance on the alleged misrepresentations.").  Riddle never claims she

was anything other than an employee at-will, or that the alleged assurances related

to anything other than employment at-will.

   In sum, Riddle's allegations of assurances of re-employment fail to state a

plausible claim to relief, fail to meet the heightened Rule 9(b) pleading

requirements for matters of fraud, fail to allege facts sufficient to support a *prima*

*facie* case of fraudulent inducement, are directly refuted by the terms of the

Release she executed, and are precluded by the Release's clear and unambiguous

integration clause.  Accordingly, Plaintiff has not, and cannot, raise any genuine

issue of disputed material fact sufficient to avoid the terms of the Release and

survive summary judgment on her FMLA claim.[7]

---

[7] Although she appears to have abandoned this argument on appeal, Riddle argued
to the district court that Department of Labor ("DOL") regulations prevent the
settlement or release of FMLA claims, citing to the Fourth Circuit's opinion in
*Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 368 (4th Cir. 2005).  *See* Plaintiff's
Motion for Summary Judgment at 5.  The district court correctly found that *Taylor*
has been superseded by DOL regulations, which "expressly authorize settlement
agreements releasing FMLA claim," and apply retroactively.   (A-5 (citing 9

## II.    **RIDDLE'S FMLA CLAIM IS TIME-BARRED.**

Even if the Release were not valid or did not otherwise preclude Plaintiff's claim, her FMLA claim is nonetheless barred by the statute of limitations, providing the Court an independent reason to affirm the district court's decision in its entirety.  Although the district court declined to address this question, this Court "may affirm on any ground supported in the record, even if it is not one on which the district court relied."  *Giovanniello v. ALM Media, LLC*, 660 F.3d 587, 591 (2d Cir. 2011).

Claims under the FMLA are subject to a two-year limitations period.  29 U.S.C. § 2617(1).  Only when a plaintiff has demonstrated that her employer acted willfully in violation of the FMLA does the longer, three-year limitations period apply. 29 U.S.C. § 2617(2).  It is undisputed here – and indeed, this Court already implicitly held – that if the two-year statutory period applies, Plaintiff's claim

---

C.F.R. § 825.220(d) (2009))).  Indeed, this regulation was a revision of a regulation originally promulgated in 1995, which provided simply that "[e]mployees cannot waive . . . their rights under the FMLA."  29 C.F.R. § 825.220(d) (2007).  As set forth in the preamble to the revised regulation, the DOL revised the regulation in the interest of clarity to make explicit that employees and employers were permitted to agree voluntarily to settlement of past claims without first obtaining approval of the DOL or a court.  *See* 73 Fed. Reg. 67988 (Nov. 17, 2008); *Whiting v. Johns Hopkins Hosp.*, 416 F. App'x 312 (4th Cir. 2011).  The DOL's revisions tracked the reasoning the Fifth Circuit employed, holding that "[a] plain reading of the [2007] regulation is that it prohibits prospective waiver of rights, not the post-dispute settlement of claims."  *Faris v. Williams WPC–I, Inc.*, 332 F.3d 316, 321 (5th Cir. 2003) (interpreting specific FMLA statutory and regulatory language to uphold a release of prospective FMLA claims).  Accordingly, the district court correctly found Riddle's argument unpersuasive.

FMLA claim is time-barred. *Riddle v. Citigroup*, 449 Fed. App'x. 66, 70 (2d Cir. 2011). Plaintiff filed her Complaint on June 24, 2009. Any claim arising more than two years prior – or before June 24, 2007 – is barred by the two year limitations period. Plaintiff, of course, does not allege any violation of the FMLA after April 18, 2007.

The only question before the Court now, therefore, is whether Riddle has created a genuine dispute of fact as to whether Citi acted *willfully* in violation of her rights under the FMLA, or in reckless disregard for whether their own conduct was lawful. She has not come close to meeting that burden.[8] As this Court has held, an alleged violation is willful if the defendant either knew or recklessly disregarded whether its conduct violated the FMLA. *See Porter v. New York Univ. Sch. of Law*, 392 F.3d 530, 531-32 (2d Cir. 2004) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Accordingly, if a defendant acts reasonably, or unreasonably but not recklessly, when considering the legality of its actions, the alleged violations should not be considered willful. *See Porter*, 392 F.3d at 531-32

---

[8] Riddle's contention that the Court of Appeals "say[s] that Riddle's allegations plausibly suggest that Citigroup willfully interfered with Riddle's FMLA Rights" is misplaced. Appellant's Br. at 13. The standard for articulating a plausible claim for relief on a Rule 12 motion, of course, is much different than Riddle's burden here in response to a Rule 56 motion, which requires a plaintiff do more than "plausibly suggest" a right to relief. Rather, Appellant must now set forth "specific facts showing that there is a genuine issue for trial." *Id.* (quoting FED. R. CIV. P. 56(e)); *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). She has not done so.

(quoting *McLaughlin*, 486 U.S. at 135 n.13).  Further, "[r]eckless disregard . . . involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation."  *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08-2400, 2010 WL 1379778, at *10 (S.D.N.Y. Mar. 26, 2010) (internal citation omitted).

Riddle did not allege in her Complaint that she had sought FMLA leave during her conversations with Citi representatives in January and February 2007. Nor is there any record evidence to support such an allegation.  To the contrary, all of the contemporaneous records make clear that Riddle's communications were about changing the language of her review and formalizing her Flex-Time accommodation.  (Dkt. 55 at ¶¶ 7-16 (SOF).)  As demonstrated, Citi agreed to both.  (*Id.*)  Only in her deposition, taken five years after the fact and after this Court's remand of her FMLA claim, did Riddle choose to repeatedly and unconvincingly recast her testimony by repetition of the phrase "FMLA" while referring to those conversation.  (Dkt. 55 at ¶ 17 (SOF); Dkt. 52-1 at 62-105 (Pl. Dep.).)  Her last ditch effort to preserve her baseless claim is simply not credible and her repetition of the statute is not a substitute for actual evidence, particularly of the contemporaneous record.

In actuality, Riddle's Complaint makes only scant reference to any FMLA related issue.  In Count 9, the only Count this Court remanded, Plaintiff states only that on the day she was terminated – April 18, 2007 – she requested from Citi

employees paperwork with which to apply for FMLA.  (Dkt. 49 at 6-7 (Plaintiff's Motion for Summary Judgment); Dkt. 52-1 at 117-120 (Pl. Dep.).)  Her contention was that because Citi allegedly did not respond to this request, it willfully violated her FMLA rights.  That argument too is specious.

First, there is no evidence to support her allegation that such a request was made to anyone at Citi on April 18, 2007.  No documents were presented to support the allegation and the reference runs counter to both the fact that she was being terminated that day and thus would not have any further duties necessitating a leave and that she shortly thereafter executed a release of claims.  She did not and has not submitted any documentary evidence suggesting that she required or was eligible for FMLA leave in April 2007.  Even if Riddle had made such a request orally on the day she was terminated, she did not follow up in any way, and has produced no written materials to support her allegations.  Nor does Citi have any record of Riddle making a request for FMLA leave at any time in 2007.  These type of self-serving and wholly unsupported allegations are simply insufficient to raise an issue of fact as to an FMLA violation, let alone one that was willful, required to survive summary judgment.  *Reyes v. N.Y.C. Health & Hosps. Corp.*, No. 10-1606, 2012 WL 3764061, at *4 (E.D.N.Y. Aug. 29, 2012) (granting summary judgment for employer where, "[o]ther than Plaintiff's own testimony, the record is void of specific facts as to Plaintiff's 2007 request for FMLA leave").

29

Nor can Riddle save her claim by attempting to recast her prior conversations with Human Resources as FMLA leave requests as she did repeatedly during her deposition.  First, that repetition years later is not a substitute for evidence and runs counter to the contemporaneous record and a rational review.  Second, it is undisputed that through the course of her employment at Citi, Riddle requested – and was repeatedly provided – a flexible work schedule to accommodate her symptoms of depression.  Dkt. 55 at ¶¶ 4-5, 9-16 (SOF).  Specifically, she was allowed to come in late as needed on mornings when her depression affected her, and was permitted to make up time after hours so that she could maintain a full time schedule.  Dkt. 55 at ¶¶  4-5, 9, 11, 14.  There is no rational basis for believing that Citi would not have given due consideration to a request for FMLA leave in 2007 had one been made by Riddle in 2007.  There certainly is no basis for finding that Citi somehow willfully deprived her of FMLA rights, given the undisputed record.

Indeed, Riddle's argument that, despite Citi's consistent efforts over the first three years of her employment to accommodate her depression and allergies, allowing her to come late to work as necessary and affording her a flexible work schedule, Citi nonetheless denied her the opportunity to take a leave of absence during the same time, is illogical and unsupported.  *See Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 622 (2d Cir. 2012) (granting summary judgment for defendant

employer on plaintiff's claim for interference with FMLA rights where "record evidence supports only the opposite conclusion – that [defendant] granted [plaintiff] leave whenever he requested it, even before he was eligible for FMLA benefits"); *Alessi v. Monroe County*, No. 07-6163, 2010 WL 161488, at *8 (W.D.N.Y. Jan. 13, 2010) (where evidence demonstrated that plaintiff had requested FMLA leave, was granted intermittent leave for two years without incident, and was later disciplined for excessive absence, plaintiff could not establish a willful violation of the FMLA).[9]

Riddle's claims, unsupported by any record evidence, are plainly insufficient to create a genuine dispute of material fact that Defendants willfully violated her FMLA rights necessary to survive summary judgment on her FMLA claim.

---

[9] The undisputed evidence demonstrates that within the first six months of her employment with Citi, Plaintiff made her supervisors aware of her disability and they worked with her to ensure she was provided a reasonable accommodation to enable her to work.  Not insignificantly, Plaintiff's promotion to a full-time position came just a month after she informed her supervisors of her need for accommodation.  Dkt. 55 at ¶¶ 2-3 (SOF).  Plaintiff also admits she was allowed to come in late in the morning as needed to deal with symptoms of her depression as they arose.  Dkt. 55 at ¶ 4 (SOF).  Citi provided Plaintiff with this accommodation through 2004, 2005, and 2006.  Dkt. 55 at ¶¶ 5, 9 (SOF).   After Plaintiff submitted a prescription from her doctor stating she "need[ed] time in the morning for herself," Citi continued to accommodate her needs.  Dkt. 55 at ¶¶ 8, 9 (SOF).

## **CONCLUSION**

The district court properly summary judgment for Citi on Plaintiff-Appellant Beverly Riddle's remaining FMLA claim.  Such claim is barred by Riddle's execution of a valid release claims against Citi, and by the statute of limitations.

For the foregoing reasons, Defendants-Appellees Citigroup Global Markets, Inc. *et al.* respectfully request that the Court affirm the district court's decision granting their motion for summary judgment and dismissing the Complaint in its entirety.

Dated:  December 9, 2013                MORGAN, LEWIS & BOCKIUS LLP
        New York, New York


By:/s/ Ira G. Rosenstein
Ira G. Rosenstein, Esq.
Melissa D. Hill, Esq.
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendants-Appellees

CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of FED R. APP. P. 32(a)(7)(B) because this brief contains 7,592 words.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:  December 9, 2013          MORGAN, LEWIS & BOCKIUS LLP
            New York, New York

By:/s/  Ira G. Rosenstein
Ira G. Rosenstein, Esq.
Melissa D. Hill, Esq.
101 Park Avenue
New York, New York  10178
(212) 309-6000

Attorneys for Defendants-Appellees

33

## **AFFIRMATION OF SERVICE**

I am a member of the bar of this Court and counsel to Defendants-Appellees in this action.

I affirm that I have, on this 9th day of December, 2013, served a copy of the Brief of Defendants-Appellees in Response to Plaintiff-Appellant's Brief and Oral Argument Statement on Plaintiff-Appellant Beverly Riddle by the U.S. Postal Service, first-class postage pre-paid, addressed to:

> Beverly A. Riddle
> 315 Seventh Avenue
> Apartment #8E
> New York, NY 10001

    /s/ Melissa D. Hill